IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

CRYSTAL E. J.,[1]

    **Plaintiff,**

v.

    Civil Action 2:21-cv-4861
    Chief Judge Algenon L. Marbley
    Magistrate Judge Elizabeth P. Deavers

COMMISSIONER OF
SOCIAL SECURITY,

    **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Crystal E. J., brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for social security disability insurance benefits ("DIB")[2] and supplemental security income ("SSI"). This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 10), the Commissioner's Memorandum in Opposition (ECF No. 13), Plaintiff's Reply (ECF No. 14), and the administrative record (ECF No. 6). For the reasons that follow, the Undersigned **RECOMMENDS** that the Court **REVERSE** the Commissioner of Social Security's non-disability finding and **REMAND** this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

[2] At the administrative hearing, Plaintiff, through counsel, amended her alleged onset date of disability to June 3, 2019, thereby withdrawing her DIB claim. (R. at 42-43.) The ALJ's decision and this Report and Recommendation therefore only concern the SSI claim. (R. at 16.)

## I.  BACKGROUND

Plaintiff protectively filed her applications for DIB and SSI on June 3, 2019, alleging that she has been disabled since December 31, 2005, due to fibromyalgia, osteoarthritis, degenerative disc disease, depression, PTSD, anxiety, borderline personality disorder, ulcers and bladder leakage, and restless leg syndrome. (R. at 215-228, 244.)  Plaintiff's applications were denied initially in September 2019 and upon reconsideration in November 2019.  (R. at 82-115, 122-143.)  Plaintiff sought a *de novo* hearing before an administrative law judge.  (R. at 144.)  Plaintiff, who was represented by counsel, appeared and testified at a telephone hearing held on August 27, 2020.  (R. at 35-62.)  A Vocational Expert ("VE") also appeared and testified.  (*Id.*)  On October 28, 2020, administrative law judge Julianne Hostovich (the "ALJ") issued decision finding that Plaintiff has not been under a disability since June 3, 2019, the amended alleged onset date.  (R. at 13-34.)   The Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision.  (R. at 1-7.)  This matter is properly before this Court for review.

## II.  HEARING TESTIMONY

The ALJ summarized Plaintiff's relevant hearing testimony and statements to the agency as follows:

> [Plaintiff] alleged that her physical and mental conditions affect her ability to function on a daily basis. Specifically, [Plaintiff] reported that she experiences pain in her neck and arms that makes it difficult for her to sleep, lift pots and pans to cook, and groom herself. She expressed difficulty squatting, bending, reaching, kneeling, climbing stairs, using her hands, and completing tasks. She also stated that she can only walk a few feet to the end of her trailer before having to stop and rest for ten (10) to fifteen (15) minutes. [Plaintiff] also indicated that she requires reminders to take prescribed medication, experiences emotional instability, and can only concentrate for an hour at a time. She reported that she does not handle stress or changes in routine well and that she occasionally becomes angry and cries when

dealing with authority figures. [Plaintiff] also averred that she has difficulty being around others, always feeling like they are judging her.

(R. at 24 (internal citations omitted).)

### III. MEDICAL RECORDS

The ALJ summarized Plaintiff's relevant medical records as follows:

[Plaintiff] has a history of cervical spine issues; following a report of left sided-body numbness, a March 2011 MRI showed a relatively acute moderately prominent left posterolateral disk herniation with likely compression on the left aspect of the anterior spinal cord and without foraminal stenosis. Updated diagnostic testing in March 2, 2018 demonstrated degenerative changes at C5-6. Although [Plaintiff] continued to complain of neck pain, her physical examination findings were vague, noting decreased range of motion, tenderness, bony tenderness, pain and spasm. In addition, her treatment has been conservative in nature. Overall, the medical record of evidence does not contain significant physical examination findings regarding [Plaintiff's] cervical spine issues to warrant further limitations than those stated above. In fact, since the amended alleged onset date, [Plaintiff] has received very little treatment specifically for her neck.

Just prior to the amended alleged onset date in April of 2019, [Plaintiff] was involved in an accident while riding a motorcycle; she reported to the Emergency Room complaining of left arm pain and diagnostic testing showed minimal degenerative changes around the AC joint. However, her physical examination at that time showed no signs of injury, normal range of motion, no noted deformity, normal strength and sensation, and no swelling. She has reported a history of left shoulder pain, especially with activity, such as waxing her car, and upon examination showed decreased left arm and hand strength and a decreased range of motion of her neck and shoulder. She has been prescribed medication and referred to physical therapy; however, there are no physical therapy session notes of record.

[Plaintiff] has continued to report arm and neck pain. Diagnostic testing of [Plaintiff's] shoulder in August of 2019 showed no acute abnormality and only mild AC degenerative changes. Physical examinations show a decreased range of motion, tenderness to palpation, crepitus, pain, and spasm of the left shoulder and cervical back and decreased strength of the left shoulder and she has been prescribed medication.

Her treating provider has continued to document chronic neck and left shoulder pain with a limited range of motion.

With regard to her mental health conditions, [Plaintiff] has been diagnosed with depression, anxiety, and borderline personality disorder, for which she has engaged in medication management and individual counseling. Prior to the amended alleged

onset date, [Plaintiff] has a history of self-harming behaviors, like using a cat to scratch her and a psychiatric hospitalization in 2018 as a result of threats of self-harm, an abusive past, stress, and substance use.

[Plaintiff's] treatment records document a history of mood instability, anxiety surrounding her abusive relationship, and irritability. However, her mental status examinations are generally unremarkable, showing that she is oriented in all spheres, with intact memory, concentration, judgement, and insight, an intact thought process, and calm motor activity. Further, during her assessment in March of 2019, [Plaintiff] reported that she believed her mental health had stabilized.

On August 23, 2019, [Plaintiff] underwent a psychological consultative examination with Ryan Wagner, Psy.D. [Plaintiff] reported constant symptoms of depression, low energy and fatigue, experiences panic attacks, and is easily overwhelmed. She has a history of suicide attempts and was engaged in counseling services. Dr. Wagner noted that rapport was easily established and that [Plaintiff] presented with adequate grooming, clear and logical thought processes, and clear, well-articulated speech. Her thought content was noticeable for mood swings, depression, and anxiety and she exhibited a restricted emotional range. Her mental status examination showed she was oriented in all spheres, was able to recall aspects of her upbringing, and could repeat six (6) digits forward and three (3) backward, but was not able to recall any of three (3) words after a five (5) minute delay. She mentally calculated simple mathematical equations, but struggled with fractions, could only calculate one iteration of serial sevens in thirty (30) seconds, and completed serial threes in fifteen (15) seconds with one (1) error. She was documented as having an intact fund of information and sufficient judgment, but limited insight into her difficulties. Ultimately, Dr. Warner diagnosed [Plaintiff] with recurrent, mild depressive disorder with anxious distress and borderline personality disorder.

(R. at 24-25 (internal citations omitted).)

## IV. ADMINISTRATIVE DECISION

On October 28, 2020, the ALJ issued her decision. (R. at 13-34.) At step one of the sequential evaluation process,[3] the ALJ found that Plaintiff has not engaged in substantially

---

[3] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

    1.    Is the claimant engaged in substantial gainful activity?
    2.    Does the claimant suffer from one or more severe impairments?

gainful activity since June 3, 2019, the amended alleged onset date. (R. at 18.) The ALJ found that Plaintiff has the following severe impairments: degenerative disc disease of the cervical spine, degenerative joint disease of the left shoulder, depression, anxiety, and borderline personality disorder. (R. at 19.) The ALJ further found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 20.)

Before proceeding to step four, the ALJ set forth Plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, the [ALJ] finds that [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she is limited to frequent climbing of ramps and stairs, balancing, kneeling, crouching, crawling, and reaching in all directions with the bilateral upper extremities and can occasionally stoop, but can never climb ladder, ropes, or scaffolds. [Plaintiff] can have frequent exposure to fumes, odors, dusts, gases, and poor ventilation and must avoid all exposure to workplace hazards, such as unprotected heights and dangerous machinery. She can perform simple, routine tasks involving only simple, work-related decisions and has the ability to adapt to routine, workplace changes. The work cannot involve fast pace or strict production quota work or direct interaction with the public. [Plaintiff] is capable of work involving no more than occasional contact with coworkers and supervisors.

(R. at 23.) At step four of the sequential process, the ALJ determined that Plaintiff has no past relevant work. (R. at 27.) Then, relying on the VE's testimony, the ALJ concluded at step five

---

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

that Plaintiff can perform jobs that exist in significant numbers in the national economy. (R. at 28-29.) She therefore concluded that Plaintiff has not been under a disability since June 3, 2019, the amended alleged onset date. (R. at 29.)

## V. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'"

6

*Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI. ANALYSIS

In her Statement of Errors, Plaintiff asserts that the ALJ failed to properly evaluate and account for the opinions provided by Heather Gillespie, APRN, Plaintiff's primary care provider. (ECF No. 10 at PAGEID ## 1054-1059). For the reasons discussed below, the Undersigned agrees.

A claimant's RFC is an assessment of "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1). An ALJ must assess a claimant's RFC based on all the relevant evidence in a claimant's case file. *Id*. The governing regulations[4] describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. §§ 404.1513(a)(1)–(5); 416.913(a)(1)–(5). Objective medical evidence is defined as "medical signs, laboratory findings, or both." 20 C.F.R. §§ 404.1513(a)(1); 416.913(a)(1). "Other medical evidence is evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. §§ 404.1513(a)(3); 416.913(a)(3). "Medical opinion" is defined as follows:

---

[4] Plaintiff's application was filed after March 27, 2017. (R. at 270-282.) Therefore, it is governed by revised regulations redefining how evidence is categorized and evaluated when an RFC is assessed. *See* 20 C.F.R. §§ 404.1513(a), 404.1520c (2017).

> (2) Medical opinion. A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions . . . .
>
>> (i) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
>>
>> (ii) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;
>>
>> (iii) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and
>>
>> (iv) Your ability to adapt to environmental conditions, such as temperature extremes or fumes . . . .

§§ 404.1513(a)(2); 416.913(a)(2).

The governing regulations include a section entitled "[h]ow we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017." 20 C.F.R. §§ 404.1520c; 416.920c. These regulations provide that an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. §§ 404.1520c(a); 416.920c(a). Instead, they provide that an ALJ will consider medical source opinions and prior administrative findings using five factors: supportability, consistency, relationship of source to claimant, specialization, and other factors tending to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. §§ 404.1520c(c)(1)–(5); 416.920c(c)(1)–(5).

The regulations explicitly indicate that the "most important factors" to consider are supportability and consistency. 20 C.F.R. §§ 404.1520c(b)(2); 416.920c(b)(2). Indeed, the

8

regulations *require* an ALJ to "explain how [they] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings" in a benefits determination or decision and allows that the ALJ "may, but [is] not required to, explain how [they] considered" the other factors. *Id.* If, however, two or more medical opinions or prior administrative medical findings are equal in supportability and consistency "but are not exactly the same," an ALJ must also articulate the other most persuasive factors. 20 C.F.R. §§ 404.1520c(b)(3); 416.920c(b)(3). In addition, when medical sources provide multiple opinions or multiple prior administrative findings, an ALJ is not required to articulate how he evaluated each opinion or finding individually but must instead articulate how he considered the opinions or findings from that source in a single analysis using the five factors described above. 20 C.F.R. §§ 404.1520c(b)(1); 416.920c(b)(1). Finally, the regulations explain that the SSA is not required to articulate how it considered evidence from non-medical sources. 20 C.F.R. §§ 404.1520c(d); 416.920c(d).

The applicable regulations provide the following guidance for how ALJs should evaluate the "supportability" and "consistency" of medical source opinions and prior administrative findings:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 404.1520c(c)(1)-(2); 416.920c(c)(1)-(2). In practice, this means that the "supportability" factor "concerns an opinion's reference to diagnostic techniques, data collection

procedures/analysis, and other objective medical evidence." *Reusel v. Comm'r of Soc. Sec.*, No. 5:20-CV-1291, 2021 WL 1697919, at *7 n.6 (N.D. Ohio Apr. 29, 2021) (citing SSR 96-2p, 1996 SSR LEXIS 9 (July 2, 1996) (explaining supportability and inconsistency); 20 C.F.R. § 404.1527(c)(3), (4) (differentiating "supportability" and "consistency"); 20 C.F.R. § 404.1520c(c)(1), (2) (further clarifying the difference between "supportability" and "consistency" for purposes of the post-March 27, 2017 regulations)).

Against that backdrop, the ALJ provided the below discussion and analysis of Ms. Gillespie's opinions:

> The undersigned also reviewed the August 9, 2020 opinion of [Plaintiff's] treating provider Heather Gillespie, APRN. Ms. Gillespie completed a mental Medical Source Statement indicating the claimant experiences moderate restrictions relating to interaction with others and concentration and marked limitations in remembering procedures and instructions, awareness of hazards, emotional stability, maintaining personal appearance and hygiene, and tolerating customary work pressures. She also opined that [Plaintiff] would be absent more than two (2) days per month and working a full time job would likely cause deterioration of [Plaintiff's] mental health condition. **The undersigned agrees that the record supports up to moderate limitations in [Plaintiff's] mental functioning. However, no marked limitations are warranted based upon the evidence of record and [Plaintiff's] continued independence in activities of daily living. Further, there is no evidence of record supporting a determination that [Plaintiff] would experience mental deterioration or be absent excessively if working full time. [Plaintiff] does not suffer from repeated episodes of decompensation of her condition that causes inpatient hospitalization. Therefore, this opinion was found somewhat persuasive.**
>
> Ms. Gillespie also completed a physical Medical Source Statement limited the claimant to a less than full range of sedentary work with limited reaching, handling, and fingering and postural restrictions for less than eight (8) hours per day. **While the undersigned recognizes that this opinion was issued by a treating provider with first hand knowledge of [Plaintiff's] conditions, these significant restrictions are not supported by the evidence of record as a whole. [Plaintiff] remains independent in her self-care and activities of daily living, supporting her ability to perform light exertional work. Therefore, this opinion was found to hold little persuasive value.**

(R. at 27 (emphasis added; internal citations omitted).) With this discussion, the ALJ failed to

10

discuss the supportability of Ms. Gillespie's opinions – that is to say, the ALJ did not discuss Ms. Gillespie's references to "diagnostic techniques, data collection procedures/analysis, and other objective medical evidence." *Reusel*, 2021 WL 1697919, at *7 n.6.  Indeed, a reader with no previous knowledge of Plaintiff's record would have no information regarding how Ms. Gillespie reached the conclusions which the ALJ found to be only "somewhat persuasive" or have "little persuasive value," as the ALJ did not discuss the critical objective medical evidence underlying Ms. Gillespie's opinion as required.  *Id.*  The ALJ's failure is not due to Ms. Gillespie's oversight, as Ms. Gillespie personally examined and evaluated Plaintiff and discussed her objective findings within her opinions.  This is especially true for Ms. Gillespie's physical Medical Source Statement opinion, as Ms. Gillespie specifically noted that Plaintiff had chronic neck and left shoulder pain with limited range of motion – objective evidence completely overlooked by the ALJ.  (*See* R. at 959.)  Despite her duty to discuss whether Ms. Gillespie's analysis of her objective medical findings supported her opinions, ALJ failed to do so.

      The Commissioner does not dispute this, and instead argues (in various ways) that the ALJ properly considered the *consistency* of Ms. Gillespie's opinions against the record.  (*See* ECF No. 13 at PAGEID ## 1070-1080.)  The Commissioner argues that "the ALJ's decision, read as a whole, demonstrates her consideration of the supportability and consistency factors in evaluating Ms. Gillespie's opinions," but the Undersigned disagrees. (ECF No. 13 at PAGEID # 1079.)  In fact, the Commissioner's very next sentence reveals that the Commissioner is improperly conflating the supportability and consistency factors, as the Commissioner argues that "[t]he ALJ provided **ample evidence throughout the decision that was not consistent with and did not support** the disabling limitations provided in Ms. Gillespie's opinions."  (*Id.*)  Even assuming, *arguendo*, that the ALJ adequately evaluated the inconsistency of Ms.

11

Gillespie's opinion with the remainder of the record, the Commissioner does not ever indicate how the ALJ analyzed the internal supportability of Ms. Gillespie's opinions. This implicit concession dooms the Commissioner's argument, because without the ALJ discussing the extent to which Ms. Gillespie's observations supported her opinions, the Undersigned cannot trace the ALJ's path of reasoning. *See Charles K. v. Comm'r of Soc. Sec.*, No. 2:21-CV-5111, 2022 WL 1044722, at *6 (S.D. Ohio Apr. 7, 2022), *report and recommendation adopted*, No. 2:21-CV-5111, 2022 WL 1211427 (S.D. Ohio Apr. 25, 2022) ("Given the ALJ's . . . unexplained conclusions as to supportability and consistency, the undersigned cannot trace the ALJ's path of reasoning."); *Stacey v. Comm'r of Soc. Sec.*, 451 F. App'x 517, 519 (6th Cir. 2011) ("[T]he ALJ's decision still must say enough to allow the appellate court to trace the path of his reasoning.") (internal quotation marks and citation omitted).

The Commissioner's opinion that the ALJ was justified in discrediting Ms. Gillespie's opinion because her objective observations did not support her opinions is just that – the Commissioner's opinion. But the question is not whether the Court can justify the ALJ's conclusion, it is if the ALJ's decision "was made pursuant to proper legal standards.'" *Rabbers*, 582 F.3d at 651. And to this end, the Commissioner does nothing to rebut Plaintiff's argument that under the applicable regulations, the ALJ had a duty to discuss the supportability factor when determining the persuasiveness of Ms. Gillespie's opinion. Indeed, the relevant regulation reads as follows:

> **The factors of supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section) are the most important factors we consider** when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be. Therefore, **we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision**. We may, but are not required to, explain how we

12

> considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record.

20 C.F.R. § 404.1520c(b)(2) (emphasis added). For the ALJ to have adequately discussed the supportability of Ms. Gillespie's opinion, the ALJ needed to evaluate what Ms. Gillespie said she had based her opinion on – not simply how Ms. Gillespie's opinion compared to the record evidence as a whole, which only goes to the consistency of Ms. Gillespie's opinion. *See Reusel*, 2021 WL 1697919, at *7 n.6 (Discussing that an adequate "supportability" discussion "evaluat[ed] what [the doctor] said he based his opinion on," while a "consistency" discussion "compared the opinion to the evidence as a whole"). The ALJ simply did not do so for Ms. Gillespie's opinions.

Given this, it is well settled that the ALJ's failure to discuss the supportability of Ms. Gillespie's opinion requires remand, because "without fuller explanation, this court cannot engage in meaningful review of the ALJ's decision." *Reed v. Comm'r of Soc. Sec.*, No. 3:20-CV-02611-CEH, 2021 WL 5908381, at *6 (N.D. Ohio Dec. 14, 2021) (quoting *Todd v. Comm'r of Soc. Sec.*, No. 3:20-cv-1374, 2021 WL 2535580, at *8 (N.D. Ohio June 3, 2021)); *see also Jacob B. v. Comm'r of Soc. Sec.*, No. 1:20-CV-617, 2022 WL 130761, at *8 (S.D. Ohio Jan. 14, 2022) ("In the absence of a sufficient explanation of supportability and consistency with the record as a whole, the Court cannot conclude that the ALJ's consideration of Dr. Rush's opinion is supported by substantial evidence . . . . Accordingly, the ALJ's decision must be reversed and remanded for further proceedings to properly analyze Dr. Rush's medical opinions pursuant to 20 C.F.R. § 404.1520c."). Accordingly, Plaintiff's assignment of error is well taken, and the judicial inquiry ends.

13

## VII. CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Based on the foregoing, it is therefore, **RECOMMENDED** that the Court **REVERSE** the Commissioner of Social Security's non-disability finding and **REMAND** this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

## VIII. PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report an\d Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994

(6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

**Dated**:   July 12, 2022                                     /s/ *Elizabeth A. Preston Deavers*
                                                                              **ELIZABETH A. PRESTON DEAVERS**
                                                                              **UNITED STATES MAGISTRATE JUDGE**